AO 91 (Rev. 11/11)   Criminal Complaint

**FILED**

Sep 11 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| ANTHONY HERNANDEZ and EDGAR JOSUE IRIAS | ) Case No. 3:23-mj-71364 MAG |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____August 11, 2023____ in the county of ____San Francisco____ in the ____Northern____ District of ____California____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(C) | Possession with Intent to Distribute Fentanyl |
| 8 U.S.C. § 2 | Aiding and Abetting |

This criminal complaint is based on these facts:

See Affidavit of Special Agent Julian Watts.

☑ Continued on the attached sheet.

Approved as to form /s/ Wendy Garbers
                    AUSA  Garbers

Sworn to before me by telephone.

Date:    09/08/2023

City and state:        San Francisco, CA

_____
/s/ Julian Watts
*Complainant's signature*

Special Agent Julian Watts, ATF
*Printed name and title*

_____
*Judge's signature*

Peter H. Kang, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN
## ARREST WARRANT AND CRIMINAL COMPLAINT

I, Julian Watts, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for an arrest warrant and criminal complaint charging ANTHONY HERNANDEZ and EDGAR JOSUE IRIAS with possession with intent to distribute fentanyl (N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (aiding and abetting), occurring on or about August 11, 2023, in San Francisco, California, in the Northern District of California.

### SOURCES OF INFORMATION

2.      The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses.  Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part.  Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3.      Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case.  Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant.  My understanding of the facts and circumstances of the case may evolve as the investigation continues.

1

**AFFIANT BACKGROUND**

4.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and have been since May 8, 2022.  I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 3051, that is, a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, who is empowered by law to conduct investigations of, serve warrants and subpoenas for, and to make arrests for, violations of federal criminal law, including offenses enumerated in Titles 18 and 21 of the United States Code.

5.      I am a graduate of the Federal Law Enforcement Training Center (FLETC), graduating with both their Criminal Investigative Training Program and Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training certifications.  While at FLETC, I received a total of 27 weeks of training and conducted training investigations related to the enforcement of the laws and regulations related to the illegal trafficking of firearms and explosives, as well as arsons that meet the criteria of federal crime.  I also received training on narcotics recognition, testing, and Title 21 offenses.

6.      I received a Bachelor of Arts in Political Science, with a focus and departmental honors in Legal Studies, from Manhattanville College in Purchase, New York.  I am a graduate of the New York State Peace Officer Academy at the New York City Department of Investigation, and a former New York State Peace Officer.  I served in this role for approximately three years, during which I maintained and investigated a full case load while performing complex field operations, including spending time as an undercover investigator. Prior to my time at the New York City Department of Investigation, I was a Trial Preparation Assistant at the New York County District Attorney's Office for approximately one year.

7.      During my employment as an ATF Special Agent, I have participated in a variety of law enforcement actions in a supporting role.  I have participated in debriefs of confidential sources and witnesses who had personal knowledge of criminal offenses.  I have also

2

participated in many aspects of federal investigations including, but not limited to, physical surveillance and enforcement operations.  I have also taken part in numerous narcotics investigations while assisting other local and federal agencies such as the Drug Enforcement Administration (DEA), Homeland Security Investigations (HSI), and the San Francisco Police Department (SFPD).  These investigations involved reviewing police reports, reviewing body worn camera footage, collecting evidence, conducting interviews, executing search warrants, working with local and state partners, and arresting suspects.  Moreover, I have assisted in the execution of federal search and arrest warrants related to illegal activities involving firearms trafficking and the illegal possession of firearms that resulted in the arrest of suspects and seizure of the illegally trafficked firearms.  I have also taken part in multiple drug investigations and operations with the DEA and HSI's Transnational Narcotics Team.

8.     Based on my training and experience, as well as conversations I have had with drug dealers, informants, and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers.  Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.  These methods include the use of automobiles, wireless communications devices (such as cellular phones), lookouts and counter surveillance, false or fictitious identities, coded language, and/or encrypted communications.  I know that many drug traffickers use cell phones to facilitate their drug dealing activities, including to arrange the collection, transportation, and distribution of narcotics.  I also know that many drug traffickers will meet in person at pre-arranged locations to conduct meetings and transactions in furtherance of their drug trafficking activities.  Many drug dealers utilize such practices to commit crimes while avoiding detection by law enforcement.

9.     I have also had discussions with other law enforcement officers and confidential informants about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers.  I have examined

3

documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.

10.     I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued.  Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

11.     **Possession of Controlled Substance with Intent to Distribute**.  Under Title 21, United States Code, Section 841(a)(1), (b)(1)(C) it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance.  Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

12.     On August 11, 2023, HERNANDEZ and IRIAS were arrested by SFPD officers near Hyde and Turk Streets, in San Francisco, California, in the Northern District of California. Based on the facts described below, I have probable cause to believe that HERNANDEZ and IRIAS violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and aided and abetted each other, in violation of 18 U.S.C. § 2, based on their possession with intent to distribute fentanyl.

13.     At approximately 1850 hours on August 11, 2023, law enforcement personnel, from a position of concealment, observed a male, later identified as EDGAR IRIAS, pacing around the area of the west sidewalk of Hyde St. approximately 20 yards south of Turk St. While observing IRIAS, he constantly surveyed his surroundings as if he were looking for, or looking out for, someone.  Based on the training and experience of the law enforcement

4

personnel present at that time, the type of hyper vigilance displayed by IRIAS was consistent with behavior commonly displayed by narcotics dealers that are on the constant lookout for potential customers, rival drug dealers, and police presence.

14.     IRIAS was then observed approaching a male, later identified as Anthony HERNANDEZ, who was sitting in a wheelchair along the west building line of Hyde St. near where IRIAS was pacing around.  IRIAS and HERNANDEZ appeared to be having a conversation.  During the conversation, law enforcement personnel present at the time observed HERNANDEZ stand up out of the wheelchair and turn his back to IRIAS.

15.     HERNANDEZ was wearing a black backpack that IRIAS unzipped and from which he then removed a black plastic bag.  Law enforcement personnel watched as IRIAS opened the black plastic bag and removed a clear plastic sack with a white substance in it that law enforcement personnel present at that time recognized as suspected narcotics.

16.     IRIAS then knelt down near a vehicle that was parked along the West curb line, which law enforcement personnel believed was consistent with attempting to use the vehicle to conceal activity.  IRIAS looked up and down Hyde St. and appeared to be weighing the substance in the plastic sack.

17.     IRIAS stood up, put the suspected narcotics back into the black plastic bag, walked over to HERNANDEZ and placed the bag back into the backpack.  HERNANDEZ then sat back down in the wheelchair.

18.     Based on my training and experience, and from talking to experienced law enforcement officers and agents, I know that it is common practice, especially in San Francisco's Tenderloin District, for narcotics dealers to work with others to hold their narcotics for them. Narcotics dealers often do this in case they are stopped or arrested by police so that they are not found with a large quantity of narcotics on their own person.  I also know that it is common practice for narcotics dealers to pay "holders" with US currency or small amounts of narcotics for their help.  Based on my training and experience, and the facts described above, I believe that

5

IRIAS worked with HERNANDEZ as a holder of controlled substances while IRIAS accessed those controlled substances, for example, when IRIAS was observed removing, weighing, and later returning suspected controlled substances to HERNANDEZ.

19.    Law enforcement arrested HERNANDEZ and IRIAS without incident for the on-viewed possession of controlled substances and both were searched incident to arrest.  Law enforcement recovered the following evidence from the black plastic bag on HERNANDEZ's wheelchair:

- Suspected Fentanyl in 6 plastic sacks, 151.1 gg
- Suspected Methamphetamine in 1 plastic sack, 15.4 gg
- Suspected Heroin in 1 plastic sack, 11.0gg
- Suspected Base Cocaine in 1 plastic sack, 16.2 gg
- Suspected Alprazolam in a brown glass pill bottle, 16.6 net.

Law enforcement personnel also seized the following items from the black backpack that they had observed HERNANDEZ wearing during the incident:

- Suspected Fentanyl in 12 sacks, 399.8 gg
- Suspected Alprazolam in a brown glass pill bottle, 22.9 net
- A large quantity of empty plastic bags and press lock baggies.

20.    HERNANDEZ was also in possession of 2 Chinese passports, 1 Canadian Passport, and 4 California identification cards, none of which belonged to him.

21.  A search of IRIAS resulted in the following items being seized from him:

- 1 cell phone
- $69.00 of US currency
- Numerous empty plastic bags, which based on law enforcement training and experience, are consistent with packaging used to sell controlled substances.

6

22.     The suspected fentanyl seized from HERNANDEZ's backpack later tested presumptive positive for fentanyl utilizing a TruNarc testing device.  The suspected Methamphetamine seized from HERNANDEZ's black bag later tested presumptive positive for Methamphetamine utilizing a TruNarc testing device.  The suspected cocaine base seized from HERNANDEZ's black bag later tested presumptive positive for cocaine base utilizing a TruNarc testing device.

23.     A criminal records check confirmed the following:  HERNANDEZ has previously been arrested 15 times, including at least two arrests related to controlled substances distribution: 02/17/2010 – Possession for Sale of a Controlled Substance (Health and Safety Code § 11351) in San Francisco and 09/19/2013 – Possession of a Controlled Substance, Possession for Sale of a Controlled Substance, and Operating or Maintaining a Drug House (Health and Safety Code §§ 11350(a), 11351, and 11366).

24.     Based on my training and experience, the amounts and varieties of controlled substances that HERNANDEZ and IRIAS had in their possession when arrested on August 11, 2023 were consistent with amounts possessed for distribution, as opposed to mere personal use. The numerous empty plastic baggies and pressed lock baggies possessed by both HERNANDEZ and IRIAS were also indicia related to the sales of controlled substances.  The location of the arrest in San Francisco's Tenderloin District, an area known for a high volume of drug sales activity, further supports this conclusion.

## CONCLUSION

25.     Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on August 11, 2023, in the Northern District of California, HERNANDEZ and IRIAS possessed with the intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (aiding and abetting). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for their arrest.

*/s/ Julian Watts*

_____

Julian Watts
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and
4(d) on this  8th  day of September 2023.  This complaint and warrants are to be filed under seal.

_____

HONORABLE PETER H. KANG
United States Magistrate Judge

8